JUAN BIANCHI ROSAFA, demandante y apelado, *v.* MANUEL V. DOMENECH, en su carácter de TESORERO DE PUERTO RICO, demandado y apelante.

No. 6100.—*Sometido:* Abril 28, 1933. *Resuelto:* Junio 26, 1934.

42

*Hon. Procurador General Benjamin J. Horton (Charles E. Winter* en el alegato) y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelante; *Frank Martínez* y *Frank Bianchi,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El 14 de octubre de 1930 Juan Bianchi Rosafa inició este pleito en la Corte de Distrito de Mayagüez contra Manuel V. Domenech, Tesorero de Puerto Rico, reclamando la devolución de $8,251.03 pagados por contribución sobre ingresos bajo protesta, intereses y costas.

Excepcionó la demanda el demandado por no aducir hechos suficientes y luego la contestó admitiendo algunos de sus hechos, negando otros y alegando algunas defensas especiales.

Luego ambas partes se pusieron de acuerdo y sometieron a la corte de distrito la siguiente estipulación sobre los hechos:

"1ro.—El demandante, Juan Bianchi Rosafa, es mayor de edad y vecino de Mayagüez, P. R., y el demandado, Manuel V. Domenech, es mayor de edad y desempeña actualmente el cargo de Tesorero de Puerto Rico.

"2do.—La planilla No. 8 corresponde al año contributivo 1917, a virtud de la Ley Federal de septiembre 8 de 1916 enmendada en octubre 3 de 1917.

"3ro.—Dicha planilla fué firmada por el demandante ante un Inspector del Departamento de Hacienda el 5 de mayo de 1920.

"4to.—La planilla fué radicada en el Departamento de Hacienda de Puerto Rico el 5 de mayo de 1920.

"Dicha planilla fué una planilla adicional que preparó el Inspector del Departamento de Hacienda, Sr. Roig, de acuerdo con los datos que había obtenido en una investigación practicada por orden del Tesorero de Puerto Rico, de las operaciones de la firma denominada Sucrs. de Bianchi, a la que pertenecía el demandante como socio; y dicha planilla fué firmada bajo juramento por el propio contribuyente ante el Inspector Sr. Roig al serle por él presentada para consideración. La planilla original rendida a nombre del contribuyente por su apoderado don Enrique O. Green, fué radicada en el Departamento de Hacienda el 30 de mayo de 1918; la planilla suscrita por el Sr. Green a nombre del contribuyente demandante no expresaba todos los beneficios que dicho contribuyente había recibido durante el año 1917 de la firma Sucrs. de Bianchi, a la cual pertenecía el demandante.

"5to.—En junio 10 de 1922, de acuerdo con dicha planilla adicional, el Tesorero de Puerto Rico impuso al demandante por concepto de contribuciones sobre ingresos, a virtud de la mencionada Ley Federal de septiembre 8 de 1916 y enmendada en octubre 3 de 1917, la cantidad de $4,067.22; esta suma representa la contribución impuesta sobre dicha planilla adicional menos el importe de la contribución pagada por la planilla original, que fué la única que el contribuyente demandante había rendido para aquel año, y que montaba a $350.14, por la que se expidió el recibo No. 6.

"6to.—Durante todo el tiempo desde que dicha planilla fué radicada en el Departamento de Hacienda hasta el 17 de septiembre de 1930, el demandante no ha pagado ni al Tesorero de Puerto Rico ni a ningún oficial o empleado del Departamento de Hacienda la cantidad que se reclama en la demanda.

"7mo.—El Sr. Enrique O. Green, actuando en representación del contribuyente, rindió la declaración de ingresos, planilla No. 8 correspondiente al año natural terminado el 31 de diciembre de 1917. En virtud de dicha declaración de ingresos se impuso al demandante una contribución de $350.14 y se le expidió el recibo No. 6. Esta contribución le fué notificada y se le requirió de pago el día 29 de mayo de 1918.

"8vo.—Habiendo radicado la firma Sucrs. de Bianchi una planilla en la que se declaraban beneficios, el Departamento de Hacienda acordó practicar una investigación de las operaciones de la firma Sucrs. de Bianchi, de la cual era socio el demandante. Uno

de los Inspectores del Departamento de Hacienda, Sr. Roig, preparó, como resultado de esa investigación, una planilla adicional a nombre del demandante, en la cual se incluyeron los ingresos que originalmente habían sido declarados en la planilla rendida por el Sr. Green a nombre del demandante, y además, otros beneficios que había omitido declarar y que le correspondieron en la repartición de beneficios o utilidades que hizo entre sus socios la mencionada firma Sucrs. de Bianchi, correspondiente al año 1917; cuyos beneficios no declarados previamente importaban la suma de $86,795.88. Se impuso entonces al demandante contribuyente una contribución de $4,417.36; se le acreditó a esta suma lo pagado por el recibo original No. 6 ó sea $350,14, quedando un saldo a favor del Tesoro de $4,067.22, que es la suma reclamada en la demanda.

"9no.—La referida planilla adicional que preparó de oficio el Inspector Sr. Roig, y en la que constaban los beneficios no declarados previamente, fué suscrita y jurada voluntariamente y sin protesta por el propio demandante.

"10mo.—Esta contribución fué notificada al demandante el día 10 de julio de 1922. El día 26 del mismo mes y año el demandante utilizó los servicios profesionales del Ledo. Sr. Ortiz Alibrán para obtener que el Tesorero de Puerto Rico cancelase el recibo No. 6 A por la suma de $4,067.22, alegando la prescripción del derecho para imponer y recaudar dicha contribución después de transcurridos los 3 años que señala la sección 9 A-1 de la Ley Federal de septiembre 8 de 1916, enmendada en octubre 3 de 1917. La solicitud presentada a nombre del contribuyente por el Ledo. Ortiz Alibrán fué denegada y el 4 de agosto de 1922 se notificó al contribuyente de tal resolución por el Colector de Rentas Internas de Mayagüez, quien le requirió el pago de las contribuciones, informándole que utilizaría la vía de apremio. Se informó al Ledo. Ortiz Alibrán, el día 8 de agosto de 1922, que la cancelación del recibo solicitado había sido negada porque sólo habían transcurrido 2 años y 1 mes desde el 5 de mayo de 1920, en que se radicó la planilla adicional, hasta la fecha de la notificación, julio 10, 1922.

"11mo.—El contribuyente posteriormente utilizó los servicios o gestiones del Sr. Guillermo Cabrera para recabar del Tesorero de Puerto Rico la suspensión del cobro del recibo No. 6 A, a lo que accedió el entonces Tesorero de Puerto Rico ordenando por telégrafo al Colector de Rentas Internas de Mayagüez suspender el cobro por 30 días a partir desde octubre 20, 1922. Vencida esa prórroga el demandante hizo nuevas gestiones para que se pospusiera el cobro valiéndose de los servicios del Ledo. Cayetano Coll y Cuchí, quien

a nombre del contribuyente solicitó del Departamento de Hacienda, en abril de 1923, una investigación, o que en su defecto se sometiera todo el caso para la resolución por la Junta de Revisión e Igualamiento. Se accedió por el Tesorero de Puerto Rico a la suspensión del cobro y se acordó practicar la comprobación de la planilla en la investigación solicitada por el Lcdo. Coll y Cuchí, de lo cual se informó al 'Colector de Rentas Internas de Mayagüez el 13 de abril de 1923. En esta fecha ya el Colector había dado comienzo a las diligencias de embargo de bienes del demandante contribuyente.

"12.—El día 13 de octubre de 1933 los Inspectores del Departamento de Hacienda que habían sido comisionados para la investigación solicitada por el Lcdo. Coll y Cuchí a nombre del contribuyente, avisaron que no habían podido practicarla porque el contribuyente les informó de que los libros de la Sociedad Sucrs. de Bianchi habían sido destruídos en el Terremoto de 1918.

"13.—El 24 de septiembre de 1925 el Tesorero de Puerto Rico decretó a instancias del contribuyente la posposición de la subasta de los bienes embargados del contribuyente que estaba señalada para el día 8 de octubre de 1925.

"14.—En julio de 1927 el demandante interpuso recurso de alzada ante la Junta de Revisión e Igualamiento, alegando en dicho recurso que la contribución sobre ingresos impuesta al contribuyente demandante estaba prescrita de acuerdo con la Ley.

"15.—En marzo 11 de 1930 el Secretario de la Junta de Revisión e Igualamiento notificó al demandante que no se le podía dar curso a dicha alzada por haber sido radicada fuera de tiempo.

"16.—En junio de 1930 el Tesorero de Puerto Rico embargó a nombre de El Pueblo de Puerto Rico bienes inmuebles del demandante, los cuales hubieran sido vendidos, dentro del curso de la ley, en pública subasta si la contribución impuesta no era satisfecha por el demandante; el demandante pagó bajo protesta para evitar la venta de los bienes en pública subasta."

Y poco después le sometieron la siguiente estipulación adicional:

"1.—Que en septiembre 23 de 1930 el demandante debidamente radicó (*filed*) en la Tesorería de Puerto Rico, una petición de reintegro (*refund*) por la suma de $8,251.03, importe de la contribución impuesta, más los intereses y recargos, cuya petición de reintegro fué denegada por el Tesorero de Puerto Rico.

"2.—Que el demandante radicó (*filed*) en apelación dicha reclamación de reintegro ante la Junta de Revisión e Igualamiento, la cual también la denegó.

"3.—Que el demandante radicó ante esta Corte la demanda en el caso de epígrafe dentro del período que marca la ley sobre devolución de contribuciones pagadas bajo protesta."

El 25 de abril de 1932 la corte de distrito resolvió el caso declarando que los hechos y la ley estaban a favor del demandante y dictando sentencia concediendo lo reclamado en la demanda. No consta que emitiera opinión para fundar su fallo.

No conforme el demandado, interpuso el presente recurso de apelación, señalando como único error el cometido a su juicio por la corte de distrito al decidir que los hechos y la ley estaban a favor del demandante y al declarar en su consecuencia la demanda con lugar.

Como puede verse, no hay cuestión sobre lo correcto de la contribución. Según se hizo constar expresamente en la estipulación, en la planilla adicional de que se trata *constaban los beneficios no declarados previamente, la* planilla *fué suscrita y jurada voluntariamente y sin protesta por el propio demandante* y la contribución cobrada por el Tesorero *representa la contribución impuesta sobre dicha planilla adicional menos el importe de la contribución pagada por la planilla original.* Todas las cuestiones que se levantaron por el contribuyente primero ante el propio Tesorero, después ante la Junta de Revisión e Igualamiento y por último ante la corte de distrito, fueron cuestiones de prescripción. En tal virtud, si la acción del Pueblo había prescrito al tiempo en que las contribuciones se pagaron bajo protesta, nada más habría que indagar para confirmar la sentencia apelada. Si no había prescrito, debe decretarse su revocación, declarándose en tal caso la demanda sin lugar.

Examinemos en primer término si el 10 de julio de 1922, día en que según la estipulación se notificó al contribuyente la contribución impuéstale de acuerdo con la planilla adicional,

había o no prescrito el derecho para imponer y recaudar dicha contribución, como sostuvo el contribuyente ante el Tesorero por medio de su abogado Sr. Ortiz Alibrán.

El caso se rige por la Ley Federal sobre Contribuciones sobre Ingresos de septiembre 8, 1916, hecha extensiva a Puerto Rico por su sección 23. Lo pertinente de la sección 9 de dicha Ley, que es la aplicable, prescribe:

"Sección 9. (*a*) Que toda tasación será hecha por el Comisionado de Rentas Internas y en primero de junio de cada año o antes se informará a toda persona la suma de que es responsable respectivamente, y dichas sumas serán pagadas el 15 de junio o antes, excepto cuando hubiere una negativa o no se hubiesen radicado las planillas así como cuando se archivaren planillas erróneas, falsas o fraudulentas, en cuyos casos el Comisionado de Rentas Internas, al enterarse de ello, en cualquier momento dentro de un período de tres años a partir del vencimiento de la planilla o de la fecha en que la misma se radique, preparará una planilla con la información obtenida en la forma que se dispone en este título o de conformidad con la ley existente o exigirá que se hagan las correcciones necesarias, y la tasación hecha por el Comisionado de Rentas Internas será pagada por tal persona o personas inmediatamente que sea notificada del importe de tal tasación; . . ."

Los ingresos del contribuyente en este caso lo fueron por el año natural de 1917. La contribución debió imponerse y notificarse al contribuyente en o antes del primero de junio de 1918, y así se hizo, pagándose por él de acuerdo con la notificación la suma de $350.14; pero como se encontrara a virtud de una investigación practicada al efecto que la planilla rendida por el contribuyente en mayo de 1918 era por lo menos errónea ya que no contenía todos los beneficios por él recibidos, un inspector del Departamento de Hacienda preparó la planilla adicional de que habla la estipulación y la sometió al contribuyente que la aceptó y firmó voluntariamente, radicándose en Tesorería el 5 de mayo de 1920, dentro del término de tres años que fija el estatuto.

Una vez rendida la planilla bajo esas condiciones, la ley prescribe que la contribución impuesta por el Tesorero será

pagada por el contribuyente inmediatamente que se le notifique de ello, pero no fija al Tesorero el término dentro del cual debe calcular la contribución y notificarla.

Es, pues, claro que en julio 10, 1922, cuando el contribuyente fué notificado de la contribución impuéstale de acuerdo con la planilla adicional, no pudo alegarse con éxito cuestión alguna de prescripción y al resolverlo así el Tesorero en agosto de 1922 actuó de acuerdo con los hechos y la ley.

Hemos querido estudiar separadamente este primer aspecto del caso y resolverlo por sus méritos para ser más exactos aunque al parecer fué abandonado por el propio contribuyente al recurrir ante los tribunales de justicia. En su alegato el contribuyente dice:

"La teoría de nuestro caso es la siguiente: El demandante radicó su planilla original en mayo, 1918. Basado en esta planilla hubo una imposición y cobro dentro del período de cinco años que establecía la Ley de 1921 (*Act of 1921*). En julio, 1922, hubo una imposición adicional sobre ingresos del mismo año (1917). Esta imposición adicional, al igual que la original, fué hecha de acuerdo con los términos de la dicha Ley. Pero esta contribución adicional, si bien debidamente impuesta, no fué debidamente recaudada (como lo había sido la original) dentro del período de cinco años especificado por la Ley de 1921, toda vez que cualquier imposición de contribución por concepto de ingresos de 1917 tenía que ser recaudada dentro de los cinco años después de la planilla original haber sido radicada. Los hechos demuestran que la planilla original fué radicada en mayo, 1918, y la contribución adicional fué recaudada en septiembre 17, 1930, o sea, doce años después.

"La Ley que controla nuestro caso es la Ley de 1921. Cuando la Ley de 1924 (*Act of 1924*) empezó a regir ya había prescrito el término dentro del cual se podía recaudar la contribución adicional impuesta. Toda vez que la planilla original se radicó en mayo, 1918, el período para recaudar la contribución adicional terminó en mayo de 1923."

Y antes había dicho:

"Con anterioridad al año 1918, no existía, en cuanto a contribuciones sobre ingresos, ninguna ley que prescribiera la prescripción, es decir, el período de tiempo dentro del cual tuviese el Gobierno que imponer y cobrar las contribuciones. La Ley sobre Contribu-

ciones de 1918 (*Act of 1918*) fué la primera ley que fijó un período de tiempo específico dentro del cual se tenía que hacer el cobro (*collection*). Fijó cinco años que empezaban a contarse (*began to run*) desde la fecha en que la planilla era o debía haber sido radicada (*was due or was made*)—sección 250 (*d*) de dicha Ley. La Ley de 1921 fijó el mismo período de prescripción (*period of limitation*), a contar desde el día en que la planilla era radicada (*filed*). Esta Ley hacía extensivo y aplicable dicho período de prescripción a la recaudación de ingresos no solamente impuestos por dicha Ley, sino que también prohibía la recaudación de ingresos que hubiesen sido impuestos en virtud de cualesquiera de las Leyes anteriores sobre ingresos, cinco años después de la planilla haber sido radicada (*filing of the return*). Véase el '1921 Act,' sección 250 (*d*).

"Copiamos de Klein's 'Federal Income Taxation,' pár. 42 : 8 (*a*), página 1490:

" 'The 1918 Act was the first to impose a specific period of limitation upon collection. It fixed a five-year period which began to run from the date when the return "was due or was made." The 1921 Act fixed the same period of limitation to commence with the filing of the return; it applied to the collection not only of taxes imposed by that Act but likewise to taxes imposed by all prior Acts . . .'

"De manera que la Ley de 1921 (*Act of 1921*) hizo extensivo y aplicable a la Ley de 1917 (*Act of 1917*) el período de prescripción en cuanto a la recaudación de contribuciones impuestas a virtud de dicha Ley de 1917, de modo que el Gobierno solamente podía cobrar las contribuciones dentro de los cinco años siguientes a la radicación de la planilla. Aplicando este principio a los hechos del presente caso, nos encontramos con que, como el demandante había radicado su planilla en mayo de 1918, el Tesorero sólo tenía hasta mayo de 1923 para cobrar las contribuciones. Un cobro después de esta fecha era ilegal."

A su vez en su alegato el gobierno sostiene:

"La Ley Federal de 1918, no se aplicó a Puerto Rico; sólo se aplicó a Puerto Rico la de 1916, enmendada por la Ley de octubre 3 de 1917.

"Posteriormente la Asamblea Legislativa de Puerto Rico, haciendo uso de la autoridad de que estaba investida, derogó la Ley Federal y decretó las distintas leyes insulares sobre contribuciones de ingresos: la No. 59 de 1917, la No. 80 de 1919, la No. 43 de 1921 y la No. 74 de 1925."

No es importante resolver si es la ley insular o la federal la aplicable para decidir la cuestión de prescripción suscitada, porque ambas son prácticamente iguales sobre el particular. Conocemos la ley federal invocada por el contribuyente. La insular a su vez prescribe:

"Sección 56.—Cualquier contribución imponible de acuerdo con las disposiciones de esta Ley podrá ser computada e impuesta por el Tesorero dentro de cinco años después de la fecha en que se rindió o debió rendirse la declaración, y no se iniciará ningún procedimiento para el cobro de la referida contribución después de expirados los cinco años.

"En el caso de que con el fin de evadir el pago de la contribución no se rinda la correspondiente declaración de ingresos, y en el caso de declaraciones falsas, el importe de la contribución imponible, podrá ser determinado y cobrada aquélla en cualquier tiempo, sin limitación alguna." Ley No. 80 de 1919, Leyes de 1919, p. 663.

Si las únicas fechas que pudieran tomarse en consideración fueran las en que basa su argumentación el contribuyente, a saber: mayo de 1918 en que se rindió la planilla original, julio de 1922 en que se impuso la contribución adicional y septiembre de 1930 en que tuvieron lugar los procedimientos que dieron lugar al pago bajo protesta, habría que reconocer que tenía plena razón al sostener que había prescrito la acción del Pueblo para hacer efectiva la contribución.

Pero hay otras fechas a considerar. De la estipulación resulta que impuesta la contribución adicional y notificada al contribuyente en julio 10, 1922, dentro del período de cinco años contados a partir de mayo, 1918, y desestimadas las reclamaciones administrativas del contribuyente, no sólo se le notificó y requirió nuevamente de pago si que se inició el procedimiento de apremio para el cobro antes de que tal período de cinco años transcurriera. Textualmente volvemos a copiar de la estipulación (bastardillas nuestras):

"11mo.—El contribuyente posteriormente utilizó los servicios o gestiones del Sr. Guillermo Cabrera para recabar del Tesorero de Puerto Rico la suspensión del cobro del recibo No. 6 A, a lo que accedió el entonces Tesorero de Puerto Rico ordenando por telé-

grafo al colector de rentas internas de Mayagüez suspender el cobro por 30 días a partir desde octubre 20, 1922. Vencida esa prórroga el demandante hizo nuevas gestiones para que se pospusiera el cobro valiéndose de los servicios del Lcdo. Cayetano Coll y Cuchí, quien a nombre del contribuyente solicitó del Departamento de Hacienda, en abril de 1923, una investigación, o que en su defecto se sometiera todo el caso para la resolución por la Junta de Revisión e Igualamiento. Se accedió por el Tesorero de Puerto Rico a la suspensión del cobro y se acordó practicar la comprobación de la planilla en la investigación solicitada por el Lcdo. Coll y Cuchí, de lo cual se informó al Colector de Rentas Internas de Mayagüez el *13 de abril de 1923. En esta fecha ya el Colector había dado comienzo a las diligencias de embargo de bienes del demandante contribuyente.*"

Sabemos por la estipulación que la nueva investigación solicitada por el contribuyente por medio de su abogado Coll y Cuchí no pudo practicarse por haberse informado por el propio contribuyente que los libros de la Sociedad Sucesores de Bianchi habían sido destruídos por el Terremoto de 1918, y sabemos también por ella que continuando en el procedimiento de apremio se señaló la subasta de los bienes embargados al contribuyente para el 8 de octubre de 1925; que esa subasta fué suspendida a instancias del contribuyente; que éste, en julio de 1927, interpuso recurso de alzada para ante la Junta de Revisión e Igualamiento, insistiendo en que la contribución estaba prescrita, decidiéndose el recurso en contra suya, procediéndose entonces por el Tesorero en junio de 1930 no a iniciar sino a continuar los procedimientos para el cobro de la contribución por la vía administrativa.

Lo que la ley requiere es que se inicie el procedimiento de apremio o se recurra a la vía judicial dentro del período de cinco años y aquí se reconoce que el procedimiento de apremio estaba iniciado a más tardar a la fecha del 13 de abril de 1923 cuando no habían transcurrido cinco años contados a partir de mayo de 1918.

Es cierto que el procedimiento fué suspendido, pero lo fué a instancias del contribuyente y a los efectos de practicar

una nueva investigación que no pudo llevarse a efecto porque el mismo contribuyente no pudo aportar la base necesaria para ello, sus libros de contabilidad.

El término de prescripción quedó así interrumpido y otra vez antes de transcurrir cinco años contados a partir de la interrupción se continuó el procedimiento de apremio, señalándose la subasta de bienes del contribuyente para el 8 de octubre de 1925, subasta que también se suspendió a instancias del contribuyente, que acudió entonces a la Junta de Revisión e Igualamiento que resolvió su caso en contra suya en 1930 y fué en junio de ese año cuando aún no habían transcurrido cinco contados a partir de la última interrupción, que el Tesorero insistió en el cobro y el contribuyente pagó bajo protesta.

Hemos examinado la jurisprudencia que invoca el contribuyente en su alegato y a nuestro juicio no se opone, si que más bien sostiene la interpretación que hemos dado a la ley aplicada a los hechos de este caso, como veremos en seguida.

Entre los casos citados hay dos de la Corte Suprema nacional, el de *Bowers* v. *N. Y. & Albany Co.,* 273 U. S. 346 y el de *Russell et al* v. *United States,* 278 U. S. 181.

En el primero dijo la corte:

"La cuestión a resolver es ésta: Cuando, de conformidad con las leyes de contribuciones vigentes con anterioridad a la Ley de Rentas Internas de 1921, las contribuciones sobre ingresos y por utilidades en exceso fueron fijadas dentro de los cinco años de archivada la planilla ¿impide el artículo 250 (*d*) de esa Ley el cobro de las mismas mediante un procedimiento de apremio iniciado después de haber expirado el período de cinco años?

"Aquella parte del inciso que tiene relación con el presente caso se publica al margen. La cláusula en controversia lee así: 'No se iniciará ningún pleito o procedimiento para el cobro de tales contribuciones después de haber transcurrido cinco años a partir de la fecha en que se radicó la planilla.' El peticionario insiste en que la palabra 'procedimiento' se refiere tan sólo a un procedimiento ante una corte y que significa lo mismo que 'pleito'; y que la ley

no fija limitación alguna para el cobro de dichas contribuciones me·
diante apremio.

"Hay dos maneras de exigir el pago. Una es mediante un
pleito, o sea, a virtud de un procedimiento judicial; la otra es el
apremio, un procedimiento administrativo. La palabra 'procedi-
miento,' se usa adecuada y corrientemente para incluir aquellos pa-
sos dados en el curso de uno u otro. Nada hay en la fraseología o
en el contexto que indique una intención de restringir su signifi-
cado, o de usar las palabras 'pleito' y 'procedimiento' como sinó-
nimas.

  \*   \*   \*   \*   \*   \*   \*

"La palabra 'procedimientos' es usada acertadamente para des-
cribir los pasos que hay que dar para el apremio y venta de bienes
con el propósito de exigir el pago de contribuciones. Véanse Parker
v. Rule's Lessee, 9 Cranch 64, 70; Murray's Lessee v. Hoboken Land
and Improvement Co., 18 How. 272; Sheridan v. Allen, 153 Fed.
568. Cf. Scottish Union & Nat. Ins. Co. v. Bowland, 196 U. S. 611,
632, 633; Hale v. Henkel, 201 U. S. 43, 66. Posteriormente en el
inciso (g) del artículo 250, se usa la palabra 'procedimientos' en
su sentido lato para significar los pasos que hay que dar a fin de
cobrar las contribuciones. Evidentemente, su significado allí no está
limitado al cobro mediante un pleito. Y en otras partes de las le·
yes de rentas internas, aprobadas antes de que surgiera esta con-
troversia se usa esa palabra para describir los pasos que hay que
dar con el propósito de sujetar al procedimiento de apremio y ven-
der bienes muebles y para incautarse y enajenar bienes inmuebles
para el cobro de contribuciones. Véanse Estatutos Revisados, sec-
ciones 3194, 3199, 3200, 3203, y las notas a los artículos 3190 y
3197. El artículo 250 (d) de la Ley de 1921, y estas secciones de
los Estatutos Revisados se refieren a la misma materia y deben ser
interpretados conjuntamente.

"Es claro que el significado de la palabra 'procedimiento,' tal
cual ha sido usada en la cláusula que fija el período prescriptivo
en el artículo 250 (d) de la Ley de Rentas Internas de 1921, no
puede limitarse a los pasos dados en un litigio; incluye igualmente
los pasos dados para el cobro de contribuciones mediante el proce··
dimiento de apremio."

Y en el segundo resolvió:

"La Ley de Rentas Internas de 1921 limitaba el término dentro
del cual podían tasarse las contribuciones sobre ingresos y utilida-
des impuestas por la Ley de 1918, y dentro del cual podía incoarse ·

la acción en cobro de las mismas, a cinco años contados a partir de la radicación de la planilla. La sección 277 de la Ley de Rentas Internas de 1924 conserva generalmente el mismo límite de tiempo, pero cuando la tasación se hace dentro del período de tiempo prescrito, la sección 278 autoriza la iniciación del pleito dentro de seis años contados a partir de la tasación, declarando, sin embargo, esta última sección que la misma no autoriza que se promueva un pleito ya prescrito por la legislación existente, ni 'afecta ninguna tasación'. hecha con anterioridad a la fecha de la Ley. *Se resolvió*, tomando en consideración estos y otros factores de la Ley de 1924, que la disposición que extendía el término para iniciar los pleitos debía interpretarse progresivamente y en el sentido de que se refería solamente a tasaciones hechas después de aprobada la Ley.''

Ambos casos fueron citados y aplicados por esta Corte Suprema en el de *Pueblo* v. *Sucn. Serrallés,* 40 D.P.R. 228, en el que se resolvió, copiando del resumen:

''Cuando de la demanda en cobro de contribuciones se infiere que se rindió la declaración de ingresos con más de cinco años de anterioridad a la fecha de la demanda y que se pagó contribución conforme a la liquidación del Departamento de Hacienda y no se alega falsedad o fraude en la declaración de ingreso, la acción está prescrita bajo la Sección 56 de la Ley No. 80 de 1919 (Leyes de 1919, p. 663).''

Los otros casos que se citan proceden de cortes federales, de distrito o de circuito. En el de *Thornhill Wagon Co.* v. *Noel,* 17 F. (2d) 407, 409, se dijo en el curso de la opinión:

''. . . si interpreto correctamente la conclusión allí enunciada, ésta parece haber sido contestada afirmativamente por la Corte de Circuito de Apelaciones del Segundo Circuito en el caso de New York Lighterage Co. v. Bowers, 10 F. (2d) 1017 (s. c. [D. C] 4 F. (2d) 604), pues allí aparentemente se resolvió que de conformidad con la sección 250 (d) de la Ley de Rentas Internas de 1921 (Estatutos Revisados, sección 6336 1/8 tt) que fijaba un período prescriptivo de cinco años, no podía iniciarse legalmente un procedimiento de apremio después de transcurrido dicho período de cinco años, y un pago efectuado por un contribuyente como resultado de tal procedimiento equivalía a un pago obtenido mediante coerción, y la suma así pagada podía ser recobrada en un procedimiento en ley.''

Y en el de *Citizens' Bank of Lafourche* v. *Miller-Link Lumber Co.*, 16 F. (2d) 163, 164, la corte se expresó así:

" 'El primer paso dado por el gobierno en esta intervención o procedimiento para cobrar las contribuciones fué en julio 5, 1923 cuando el colector radicó una prueba de reclamación ante esta corte, solicitando el pago de contribuciones adicionales por la suma de $2,815.07, una penalidad del cinco por ciento ascendente a $140.07 e intereses al tipo del uno por ciento mensual desde marzo 27, 1923.'

"Se libró un mandamiento de apremio en fecha incierta, que para los fines de este caso se admite fué anterior al 12 de abril de 1923. Los síndicos suscitan entre otras la proposición de que esta intervención ha prescrito de conformidad con la limitación estatutaria de cinco años, toda vez que la misma no fué iniciada hasta el 5 de julio de 1923, o sea, más de cinco años después de radicarse la planilla en 12 de abril de 1918.

"La contención del gobierno en respuesta es que esta intervención, que consiste en la radicación de prueba de su reclamación y en la súplica de que la misma sea concedida como una reclamación preferente, no es un pleito o procedimiento dentro del significado de tales palabras conforme las mismas son usadas en el estatuto— en el cual sólo se hace referencia a 'procedimientos judiciales.'

"La sección 250 (*d*) de la Ley de Rentas Internas de 1921 provee, bajo las disposiciones en que ha de resolverse la controversia aquí envuelta, lo siguiente:

" 'No se promoverá ningún pleito o procedimiento en cobro de contribuciones adeudadas bajo esta ley o bajo cualesquiera leyes de contribuciones, de utilidades en exceso o de utilidades de guerra, . . . después de transcurridos cinco años contados a partir de la fecha en que se radicó tal planilla.' Estatutos Compilados, sección 6336 1/8 tt (*d*).

"La reclamación aquí interpuesta ha sido hecha contra los síndicos de la Miller-Link Lumber Co. Siendo el activo de esa firma administrado por esta corte, las intervenciones o reclamaciones archivadas en la forma en que ésta fué presentada, constituyen la única forma en que, bajo las circunstancias, pueden ser concedidas o pagadas contra la Miller-Link Lumber Co. Es impertinente el calificativo que se le dé al procedimiento. En su análisis final el esfuerzo aquí hecho se dirige a obtener una orden de esta corte con el objeto de que la reclamación sea concedida y que se ordene a los síndicos que la paguen con preferencia a otras reclamaciones. Necesariamente es un 'procedimiento en corte' y a mi juicio es el

único procedimiento que podría seguirse para lograr los resultados deseados.

"El contexto del estatuto en mi opinión me parece concluyente en relación con la cuestión aquí envuelta. La ley que crea el derecho a cobrar las contribuciones, por su propia fraseología provee que no se iniciará ningún pleito o procedimiento en cobro de las mismas luego de expirado un período de cinco años contado a partir de la fecha en que se radicó la planilla. Transcurrido dicho término la reclamación ha quedado extinguida para todo fin o propósito. La política del gobierno es que expirado dicho período de tiempo las reclamaciones sean incobrables por la vía judicial. Esta interpretación, según los casos que se me han citado y de acuerdo con mi propia investigación, ha sido sostenida por todas las cortes ante las cuales se ha presentado la cuestión. Du Pont v. Graham (C. D.) 283 F. 300; Seaman v. Bowers (C. C. A.) 297 F. 371; New York & Albany Lighterage Co. v. Bowers (D. C.) 4 F. (2d) 604.

"No habiendo cuestión alguna relativa a haberse presentado planillas falsas o fraudulentas y siendo incontrovertido que la intervención fué archivada más de cinco años después de haberse radicado la planilla, soy del criterio de que la reclamación debe ser denegada. Así se ordena."

En igual sentido se manifiestan los otros casos citados, la mayor parte de los cuales consagra el principio establecido por la Corte Suprema nacional en el de *Russell,* supra, aplicado por esta Corte Suprema de Puerto Rico en el de *Sucn. Serrallés,* supra, acerca de que el término más extenso de prescripción fijado por leyes posteriores debe aplicarse a transacciones hechas después de aprobadas dichas leyes.

De acuerdo, pues, con la ley y la jurisprudencia, el cobro de la contribución de que aquí se trata bien por la vía de apremio, ya por la judicial, debió iniciarse dentro de un período de cinco años y lo que resolvemos es que tomados en consideración los hechos del caso, el procedimiento para el cobro de la contribución por la vía de apremio no se inició en junio de 1930 como sostiene el contribuyente, sino en abril de 1923, o sea, dentro del término de cinco años, bien se cuente dicho término a partir de mayo, 1918, en que se rindió la planilla original por el contribuyente, ya a partir de mayo,

1920, en que el contribuyente firmó sin reparo alguno, voluntariamente, la planilla adicional preparada a virtud de la investigación que practicara el Tesorero dentro del término de tres años autorizado por la ley.

Para llegar a esas conclusiones no hemos tenido que aplicar, pues, ninguna ley posterior, y hemos partido de la base de que no surge de la estipulación cuestión alguna de falsedad o fraude.

*Debe revocarse la sentencia recurrida y en su lugar dictarse otra declarando la demanda sin lugar, sin especial condenación de costas.*

El Juez Asociado Señor Córdova Dávila no intervino.

*Hon. Procurador General Benjamín J. Horton (Charles E. Winter* en el alegato) y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelante; *Frank Martínez* y *Frank Bianchi,* abogados del apelado.